UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JERRY KNIGHT,

                          Petitioner,                    **MEMORANDUM & ORDER**
                                                                    17-CV-2278 (MKB)

                v.

JOHN COLVIN, Superintendent,
Five Points Correctional Facility,

                          Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Petitioner Jerry Knight, proceeding *pro se* and currently incarcerated at Five Points Correctional Facility, brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's grounds for relief arise from a judgment of conviction after a jury trial in the Supreme Court of the State of New York, Kings County, for assault in the first degree and criminal possession of a weapon in the second degree. (*Id.* at 2.)

       Currently before the Court is Petitioner's renewed request to hold his petition in abeyance to allow him to file a motion to vacate his conviction pursuant to section 440.10 of the New York Criminal Procedure Law ("440 Motion") in state court, and exhaust his unexhausted claims. (Mot. for Pet. to be Held in Abeyance ("Stay Mot.") 1, Docket Entry No. 17.) For the reasons set forth below, the Court denies Petitioner's motion to hold his petition in abeyance. Within sixty (60) days of this Memorandum and Order, Petitioner may amend his habeas petition to remove his unexhausted claims, and proceed solely on his exhausted claims.

## I. Background

On September 20, 2012, a jury convicted Petitioner of assault in the first degree and criminal possession of a weapon in the second degree in connection with the shooting of Cleveland White. (Pet. 2.) On October 15, 2012, a judge sentenced Petitioner to concurrent prison terms of twenty-three years on the assault count and ten years on the weapon possession count, with five years of post-release supervision. (*Id.*) Petitioner appealed his conviction to the New York Appellate Division, Second Department, claiming that: (1) the conviction was not supported by legally sufficient evidence and was against the weight of the evidence; (2) the trial court improperly denied his request for new counsel after an inadequate inquiry; and (3) his sentence was excessive. (Pet'r App. Div. Brief, annexed to Affirmation in Opp'n to Pet. ("Resp't Opp'n") and Mem. in Opp'n ("Resp't Opp'n Mem.") as Ex. E, Docket Entry No. 7-10.) On December 9, 2015, the Appellate Division affirmed the conviction, rejecting each of Petitioner's claims on the merits. *People v. Knight*, 19 N.Y.S.3d 901 (App. Div. 2015). Petitioner sought leave to appeal from the New York Court of Appeals on the basis that the trial court improperly denied his request for new counsel. (Pet'r Letter Briefs, annexed to Resp't Opp'n and Resp't Opp'n Mem. as Exs. H and I, Docket Entry No. 7-10.) On April 4, 2016, the New York Court of Appeals denied leave to appeal. *People v. Knight*, 27 N.Y.3d 1001 (2016).

On March 31, 2017, Petitioner filed a timely habeas petition with the Court, which includes both exhausted and unexhausted claims. (Pet.) On June 14, 2017, the District Attorney's Office of King's County filed its opposition to the petition. (Resp't Opp'n; Resp't Opp'n Mem.) On April 26, 2018, after the Court granted multiple extensions, Petitioner filed his reply to the District Attorney's opposition. (Reply to Resp't Response to Order to Show Cause ("Pet'r Reply"), Docket Entry No. 18.)

### a. Petitioner's initial stay request

In his petition, Petitioner requested that the Court hold his petition in abeyance, i.e., stay his petition, to allow him to exhaust his unexhausted claims through a 440 Motion. (Pet. 1; *see also* Pet'r Letter dated Apr. 25, 2017, Docket Entry No. 5; Pet'r Letter dated June 16, 2017, Docket Entry No. 8.)[1] The petition includes four claims: (1) deprivation of right to counsel; (2) insufficient evidence to find proof of guilt beyond a reasonable doubt; (3) ineffective assistance of trial counsel; and (4) prosecutorial misconduct at trial. (*See* Pet. 6–11.) Petitioner states that he failed to exhaust his ineffective assistance of trial counsel and prosecutorial misconduct claims in state court because the claims were "unpreserved," as "counsel did not object," and "[t]herefore the grounds w[ere] never raised" or presented on appeal in Petitioner's state court proceedings. (*Id.* at 9, 11–12.) Respondent acknowledges that these claims are unexhausted. (Resp't Opp'n Mem. 1 ("The third and fourth claims are unexhausted because petitioner has not asserted either claim in state court.").)

In support of his ineffective assistance of trial counsel claim, Petitioner alleges that:

> Counsel spoke to [his] girlfriend and made negative remarks about [him], and even told [his] girlfriend not to come to [his] trial, and how he felt [Petitioner] was guilty; counsel failed to investigate the crime scene and other witnesses without any logical reason that

---

[1] In addition to his petition, Petitioner subsequently filed two letters with the Court dated April 25, 2017 and June 16, 2017, reiterating his request to hold his petition in abeyance, (*see* Pet'r Letter dated Apr. 25, 2017, Docket Entry No. 5; Pet'r Letter dated June 16, 2017, Docket Entry No. 8), and stating that he has filed requests pursuant to New York's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.* ("FOIL") to obtain legal documents in support of his "legal issues," (Pet'r Letter dated June 16, 2017). Petitioner attached to the June 16, 2017 letter copies of his FOIL requests for documents that he suggests are relevant to his 440 Motion. (*Id.* at 3–5.) Petitioner's FOIL requests seek "copies of any and all sanctions against [him] that was [sic] imposed in May of 2012 (this includes any security changes and/or classification changes or the like)"; the names of all court reporters who reported on criminal proceedings in docket number 2012KN054632 and in another illegible docket number; and copies of all transcripts pertaining to docket number 2012KN054632. (*Id.*)

> would benefit the case; counsel failed to object to [Petitioner] being charged with attempted murder 2nd and assault 1st when both charges are identical and improperly charged.

(Pet. 9.) As to his prosecutorial misconduct claim, Petitioner alleges that the "District Attorney used illegally obtained evidence as well as false information to pursue a conviction of [him]" and the "District Attorney allowed the complaining victim to give false testimony about receiving a deal in exchange for his testimony at trial against [him]." (*Id.* at 10.)

Respondent argued that a stay was not appropriate because "Petitioner ha[d] not offered a sufficient explanation for why he was unable to exhaust his . . . claims in state court before he filed his habeas corpus petition," and although Petitioner asserted that his reason for failure to exhaust was "because he had not yet obtained relevant documents to support his unexhausted claims," he nevertheless failed to "identify the documents he needs to acquire, . . . describe any efforts he has made to acquire those documents, [or] . . . explain why he could not have acquired those document sooner." (Resp't Opp'n Mem. 24.)

By Memorandum and Order dated February 12, 2018, the Court denied Petitioner's request for abeyance without prejudice. (Mem. and Order dated Feb. 12, 2018, Docket Entry No. 12.) The Court determined that Petitioner had not shown good cause for failure "to exhaust his ineffective assistance of trial counsel and prosecutorial misconduct claims." (*Id.* at 4.) The Court reasoned that:

> Petitioner does not explain how or why the fact that his claims were "unpreserved" prevented him from exhausting those claims. Nor does Petitioner allege that any of his unexhausted claims concern matters that were unknown to him during his criminal proceedings. In his June 16, 2017 letter to the Court, Petitioner suggests that he is in the process of gathering documents in support of his claims, but does not explain how those documents support his claims, why he did not previously gather these documents, or why he filed his petition without all of the relevant support for his claims.

(*Id.* (internal citations omitted).)

4

### b. Petitioner's renewed motion to hold the petition in abeyance

On April 13, 2018, Petitioner submitted a new motion for his petition to be held in abeyance so that he can exhaust his two unexhausted claims — ineffective assistance of trial counsel and prosecutorial misconduct at trial — in state court pursuant to a 440 Motion.[2] (Stay Mot.) On October 16, 2018, Respondent opposed Petitioner's motion. (Resp. in Opp'n re Mot. to Stay ("Resp't Stay Opp'n"), Docket Entry No. 19.)

In support of his renewed motion, Petitioner notes that he "was not responsible for the grounds raised in his direct appeal, and had no say . . . about what grounds were going to be raised." (Stay Mot. 2.) Petitioner further states that he "received legal advice and assistance from the law clerks at his facility" in drafting his petition, and "was told that all he [had] to do was put 'counsel did not object and the claims were unpreserved' where it asks why the issues were not raised in direct appeal." (*Id.*)

Petitioner alleges that although his appellate counsel "disregarded his wishes" to submit a 440 Motion prior to his direct appeal, "Petitioner continued to pursue a [440 Motion] but [has] yet to obtain all of the documentary evidence to support his motion." (*Id.*) Further, Petitioner claims that he has been "able to obtain most of the documentary evidence" needed to pursue a 440 Motion on the unexhausted claims, "and is currently in the process of getting an affidavit from his girlfriend and '*Giglio* material' (evidence that proves the complaining victim received a deal in exchange for his testimony), which would conclude his search for documentary evidence." (*Id.*)

---

[2] As Petitioner is proceeding *pro se*, the Court reads his motion "liberally" and interprets it "to raise the strongest arguments" that it may suggest. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

5

Respondent argues that the fact that Petitioner's "appellate counsel disregarded [P]etitioner's request to file a [440 Motion]" does not constitute good cause for failure to exhaust his claims and "does not explain why [P]etitioner could not have filed such a motion *pro se* either concurrent with his direct appeal or after his direct appeal was decided." (Resp't Stay Opp'n 1.) In addition, Respondent argues that "[P]etitioner has not shown that he would be able to file his motion in state court in a timely manner should this Court grant his application for a stay." (*Id.* at 1–2.) Respondent does not respond directly to Petitioner's assertions regarding the evidence he is "in the process of getting."[3] (Stay Mot. 2.)

## II. Discussion

### a. Standard of review

When a habeas petition is a "mixed" one — that is, one containing both exhausted and unexhausted claims — a district court has discretion to hold the petition in abeyance to permit a petitioner to exhaust the unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

### b. Petitioner has not shown good cause

Petitioner fails to show good cause under *Rhines*. As several district courts in the Second Circuit have noted, "[t]he Supreme Court and the Second Circuit have yet to define what constitutes 'good cause' under *Rhines*." *Henry v. Lee*, No. 12-CV-5483, 2013 WL 1909415, at

---

[3] Since Petitioner filed his renewed request for a stay on April 13, 2018, the Court has not received an update from Petitioner on the disposition of his anticipated 440 Motion, or the status of the evidence that Petitioner sought at the time of filing his renewed request.

*6 (E.D.N.Y. May 8, 2013); *see also Cordero v. Miller*, No. 15-CV-0383, 2018 WL 3342573, at *2 (W.D.N.Y. July 9, 2018), *reconsideration denied*, No. 15-CV-0383, 2018 WL 4846272 (W.D.N.Y. Oct. 5, 2018).

District courts in this Circuit have primarily followed two different approaches in determining whether the *Rhines* "good cause" requirement has been met. Some courts find "that a petitioner's showing of 'reasonable confusion' constitute[s] good cause for failure to exhaust his claims before filing in federal court."[4] *Whitley v. Ercole*, 509 F. Supp. 2d 410, 417–18 (S.D.N.Y. 2007) (collecting cases) (noting that "[t]his . . . manner of defining 'good cause' would allow a petitioner to show the reasons, subjectively, for the delay in filing his petition").

Other courts require a more demanding showing — that some external factor give rise to the petitioner's failure to exhaust the claims. *See, e.g.*, *Ramdeo v. Phillips*, No. 04-CV-1157, 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006) (collecting cases and noting that such "courts have reasoned that 'good cause,' like 'cause' in the procedural default context, must arise from an objective factor external to the petitioner which cannot fairly be attributed to him or her" (internal quotation marks and citations omitted)); *see also Whitley*, 509 F. Supp. 2d at 417 (noting that in that case and under this more demanding approach, "a 'good cause' requirement

---

[4] This interpretation arises from the Supreme Court's dicta in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), a case in which the Court opined that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416; *see also Davis v. Graham*, No. 16-CV-0275, 2018 WL 3996424, at *2 (W.D.N.Y. Aug. 21, 2018) ("Some district courts interpret the Supreme Court dictum in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), to suggest that a petitioner's reasonable confusion about exhaustion and state filing deadlines constitutes 'good cause.'" (citation omitted)); *Young v. Great Meadow Corr. Facility Superintendent*, No. 16-CV-1420, 2017 WL 480608, at *5–6 (S.D.N.Y. Jan. 10, 2017) (noting that "[s]everal district courts have interpreted *Pace* to indicate that 'good cause' for an order of stay and abeyance need not be based on any factor external to petitioner but rather is 'a broader, more forgiving concept.'" (quoting *McCrae v. Artus*, No. 10-CV-2988, 2012 WL 3800840, at *9 (E.D.N.Y. Sept. 2, 2012)).

7

would look for some reason, external to Petitioner, to explain Petitioner's delay in raising the issue of ineffective representation, from April 18, 2002, when [the] conviction was entered, to November 28, 2006," when the 440 Motion was filed).

For the reasons set forth below, Petitioner has not shown good cause under either approach.

### i. Petitioner has not expressed reasonable confusion

Petitioner has not expressed confusion, let alone reasonable confusion, regarding the delay in his state filing or the existence of his unexhausted claims. Instead, Petitioner specified in his petition that his claims were not exhausted in state court and notified the Court that he intended to file a 440 Motion, (*see* Pet. 1), and more recently again notified the Court that he intends to file a 440 Motion once he receives certain evidence, (Stay Mot. 3). Thus, prior to filing the petition, Petitioner knew that he needed to file a 440 Motion as to his unexhausted claims, and therefore cannot show reasonable confusion. *See Davis v. Graham*, 2018 WL 3996424, at *3 (finding no good cause, in part because it was not "apparent that Petitioner 'was confused as to whether his claims were properly exhausted in state court.'" (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)); *Young v. Great Meadow Corr. Facility Superintendent*, No. 16-CV-1420, 2017 WL 480608, at *6 (S.D.N.Y. Jan. 10, 2017) (noting that petitioner had not demonstrated confusion where "[t]o the contrary: petitioner identified the need to file a [440 motion] in his original petition"); *Holguin v. Lee*, No. 13-CV-1492, 2013 WL 3344070, at *3 (S.D.N.Y. July 3, 2013) (finding no reasonable confusion where it was "clear" that petitioner "was *not* reasonably confused as to whether his claims were properly exhausted in state court." (emphasis in original)); *but cf. Castellanos v. Kirkpatrick*, No. 10-CV-5075, 2013 WL 3777126, at *2 (E.D.N.Y. July 16, 2013) (noting that district courts have found good cause shown "where

the wording of a state court decision caused a petitioner reasonable confusion about his claims and their viability . . . , and where a pro se petitioner was unaware of the procedure for raising an ineffective assistance of counsel claim in the state." (internal quotation marks and citations omitted)).

### ii. Petitioner has not sufficiently shown that any objective factor caused his failure to exhaust claims

Petitioner has not sufficiently shown any objective factor that is responsible for his failure to exhaust his claims in state court. Districts courts "cannot grant petitioner a stay of his *habeas* petition for the sole reason that petitioner failed to bring his claim earlier." *Holguin*, 2013 WL 3344070, at *2 (quoting *Spells v. Lee*, No. 11-CV-1680, 2012 WL 3027865, at *6 (E.D.N.Y. July 23, 2012)); *see also Scott v. Phillips*, 05-CV-0142, 2007 WL 2746905, at *7 (E.D.N.Y. Sept. 19, 2007) (noting that if the court granted a stay on the basis of petitioner simply not bringing "the claim earlier, despite admittedly being previously aware of the facts supporting the claim, it would be defeating [the Anti-Terrorism and Effective Death Penalty Act of 1996's (AEDPA)] twin purposes of encouraging finality and increasing the incentives for petitioners to exhaust all claims prior to filing *habeas* petition in federal court.").

In support of his stay request, Petitioner appears to assert three potential external factors that have given rise to his failure to exhaust his ineffective assistance of trial counsel and prosecutorial misconduct claims in state court: (1) that he was not responsible for the grounds raised in his appeal; (2) that appellate counsel "disregarded his wishes" to submit an earlier 440 Motion; and (3) that Petitioner has continued to pursue a 440 Motion but has yet to obtain all of the documentary evidence he needs to file it. (Stay Mot. 2.)

Based on the facts of this case, these factors are insufficient to constitute external factors not attributable to Petitioner.

### 1. Petitioner's lack of legal knowledge and appellate counsel's actions are insufficient external factors

Petitioner's first two assertions — that he was not responsible for deciding the grounds to raise in his appeal, and that appellate counsel did not assist him in submitting a 440 Motion — are insufficient to establish good cause. *Simpson v. Yelich*, No. 18-CV-0417, 2018 WL 4153928, at *4 (N.D.N.Y. Aug. 30, 2018) ("Petitioner's pro se status and inexperience with the law are insufficient to establish good cause."); *see also Thomas v. Artus*, No. 16-CV-6132, 2017 WL 1046333, at *1 (W.D.N.Y. Mar. 20, 2017) (finding failure to show good cause where a correctional facility law clerk had alerted the petitioner to a new claim, because "ignorance of the law [was] the only reason [p]etitioner ha[d] offered for his failure to timely exhaust his new claim," and petitioner could not "contend that he was previously ignorant of the new claims' factual predicates"); *Craft v. Kirkpatrick,* No. 10-CV-6049, 2011 WL 2622402, at *10 (W.D.N.Y. July 5, 2011) ("The Court has found no cases supporting the proposition that a petitioner's ignorance of the law constitutes 'good cause' for the failure to exhaust."). In addition, although Petitioner argues that he was not responsible for the grounds raised in his appeal, it is unclear that Petitioner's unexhausted claims could have been pursued on direct appeal, as Petitioner himself suggests that the claims may be based on information outside of the record. (*See, e.g.*, Stay Mot. 2 (noting that Petitioner is obtaining documentary evidence to support his unexhausted claims, has obtained some of it, and is still seeking an affidavit from his girlfriend and "*Giglio* material.").)

Further, Petitioner's assertion that he informed his appellate counsel of his desire to file a 440 Motion indicates that Petitioner knew of the factual predicates for such a Motion at the time of his appeal, and, as Respondent argues, "that [P]etitioner's appellate counsel disregarded [P]etitioner's request to file a [440 Motion] does not explain why [P]etitioner could not have

10

filed such a [M]otion *pro se* either concurrent with his direct appeal or after his direct appeal was decided." (Resp't Stay Opp'n 1); *see also Young*, 2017 WL 480608, at *6 (noting that to the extent petitioner's ineffective assistance of trial counsel claim arose "from matters outside of the trial court record," petitioner did not offer an explanation for failure to file his 440 [M]otion while his direct appeal was pending); *Newman v. Lempke*, No. 13-CV-0531, 2014 WL 4923584, at *3 (W.D.N.Y. Sept. 30, 2014) (finding no good cause shown where petitioner had been aware "that neither his appellate counsel nor another attorney retained by petitioner would be presenting [his ineffective assistance of counsel] claim to the state courts in a [440 Motion]," and still had not presented his claims earlier).

### 2. Petitioner has not sufficiently shown that he is waiting for evidence due to an external factor

With respect to Petitioner's last assertion, that he has continued to pursue a 440 Motion but has yet to obtain all of the documentary evidence he needs to file it, Petitioner has not sufficiently explained why he is still waiting on such evidence.[5] As of Petitioner's last update to the Court, on April 13, 2018, he was still "in the process of getting an affidavit from his girlfriend and '*Giglio* material.'" (Stay Mot. 2.)

---

[5] In addition, although Petitioner claims that he has been "able to obtain most of the documentary evidence" needed to pursue a 440 Motion, (Stay Mot. 2), he does not specify the nature of the evidence, *see Boykins v. Superintendent Auburn Corr. Facility*, No. 12-CV-548S, 2015 WL 3604030, at *3–4 (W.D.N.Y. June 5, 2015) (finding that petitioner failed to show good cause in part because he "provided no further explanation" of the "new evidence" the petitioner said he was in possession of, and that thus the existence of new evidence was not sufficient to explain why petitioner had not exhausted the claims earlier).

### A. Petitioner has not shown good cause for why he is waiting on evidence to exhaust his ineffective assistance of trial counsel claim

The Court presumes that the affidavit from Petitioner's girlfriend is to support his ineffective assistance of trial counsel claim, given that the asserted factual basis for that claim is that "[c]ounsel spoke to [Petitioner's] girlfriend and made negative remarks about [Petitioner], and even told [Petitioner's] girlfriend not to come to [Petitioner's] trial, and how he felt [Petitioner] was guilty." (Pet. 9.) Petitioner also claims that his trial counsel was ineffective because "counsel failed to investigate the crime scene and other witnesses . . . [and] failed to object to [Petitioner] being charged with attempted murder 2nd and assault 1st when both charges are identical and improperly charged." (*Id.*)

Even if the Court were to assume the truth of these statements, Petitioner has known this information since his trial. Petitioner has not explained why he has been unable to obtain an affidavit from his girlfriend in the more than two-and-a-half years since the New York Court of Appeals denied Petitioner leave to appeal, and the more than one-and-a-half years since the filing of his habeas petition. *See, e.g.*, *Young*, 2017 WL 480608, at *2 (finding no good cause shown for failure to exhaust an ineffective assistance of trial counsel claim even when it hinged "on materials outside the record" and where the petitioner argued that the claim "required considerable investigation," in part because the petitioner failed to provide or describe the "off-the-record" documents); *Porter v. Keyser*, No. 15-CV-0816, 2016 WL 1417847, at *2 (S.D.N.Y. Apr. 8, 2016) (finding no good cause shown for failure to exhaust an ineffective assistance of appellate counsel claim, where petitioner provided "no explanation at all for his decision to wait . . . nearly two full years after the resolution of his direct appeal" to raise the claim in state court); *Spurgeon v. Lee*, No. 11-CV-0600, 2011 WL 1303315, at *2 (E.D.N.Y. Mar. 31, 2011)

(finding, where a 440 Motion had yet to be filed and petitioner was in the process of drafting a letter to his trial counsel, no good cause shown for failure to exhaust an ineffective assistance of trial counsel claim because the facts underlying petitioner's claim had "been known to petitioner since his trial," and petitioner had "not explain[ed] why he did not raise th[e] claim to a state court earlier, or why he did not request such an affirmation from his trial counsel at any point before he filed his petition").

### B. Petitioner has not shown good cause for why he is waiting on evidence to exhaust his prosecutorial misconduct claim

Petitioner describes the "*Giglio* material" that he is seeking as "evidence that proves the complaining victim received a deal in exchange for his testimony." (Stay Mot. 2.) Thus, the Court presumes that the "*Giglio* material" Petitioner seeks is to support his prosecutorial misconduct at trial claim, given that Petitioner's stated support for that claim includes that "[t]he District Attorney used illegally obtained evidence as well as false information," and that the "District Attorney allowed the complaining victim to give false testimony about receiving a deal in exchange for his testimony at trial." (Pet. 10.)

Plaintiff has not sufficiently shown that there is an external factor that has prevented him from obtaining the "*Giglio* material" he seeks and exhausting his prosecutorial misconduct claim. First, the facts underlying the claim have been known to Petitioner since the time of trial. (Stay Mot. 2 (admitting that Petitioner had made previous attempts to obtain such "*Giglio* material" during the course of Petitioner's state court proceedings)); *see also Spurgeon*, 2011 WL 1303315, at *3 (finding that petitioner had not shown good cause where petitioner had yet to file a 440 Motion and "the facts underlying the alleged prosecutorial misconduct were known to the petitioner at the time of trial").

13

Second, Petitioner does not inform the Court whether the "*Giglio* material" he refers to is information that was disclosed during the course of his state court proceedings, newly discovered information that had been suppressed, or new information that he is seeking. During the state court proceedings, the trial judge confirmed that the District Attorney had submitted its *Brady* material.[6] (Jury Selection Tr. 6:13–6:16, annexed to Resp't Opp'n and Resp't Opp'n Mem. as Ex. B, Docket Entry No. 7-2 ("THE COURT: You already provided me with a witness list, all the *Rosario*, *Brady* and *Consolazio* have been turned over? MS. CHAVIS: Yes, Your Honor.").) Petitioner does not specify what the "*Giglio* evidence" consists of, nor why he does not have it, and thus it is unclear if such "*Giglio* material" even exists. Petitioner argues that the prosecutor "allowed the complaining victim to give false testimony about receiving a deal in exchange for his testimony at trial," (Pet. 10), but it appears that the complaining victim did not receive any sort of deal at trial. (*See, e.g.*, Resp't Opp'n Mem. (citing White's testimony and stating that "White was not promised anything in exchange for his testimony.").)[7]

Third, Petitioner alleges that he "made a [FOIL] request [three] years ago" during the course of his state court proceedings for "*Giglio* material," and "was denied because his direct

---

[6] The Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972) expanded upon its decision in *Brady v. Maryland*, 373 U.S. 83 (1963), which held that "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady*, 373 U.S. at 87).

[7] The Court has previously held, and reemphasizes, that "[t]he nature of a *Brady* claim, predicated on failure to disclose material information, makes it particularly suitable for a finding of good cause." *Castellanos*, 2013 WL 3777126, at *2 (citation omitted). Here, however, Petitioner has not provided the Court with enough information to determine whether the "*Giglio* material" he seeks even exists. *Cf. Haywood v. Griffin*, No. 16-CV-3870, 2017 WL 961739, at *2 (S.D.N.Y. Mar. 13, 2017) (finding good cause shown for failure to exhaust *Brady* claim due to the existence of newly discovered evidence — the psychiatric records of a prosecution witness).

appeal was still pending," (Stay Mot. 2), but this does not, in and of itself, amount to an external factor sufficient to show good cause, s*ee Williams v. Bradt*, No. 10-CV-3910, 2011 WL 531732, at *2 (E.D.N.Y. Feb. 8, 2011) (finding that petitioner had failed to show good cause because "[t]he alleged failure to receive certain unidentified documents that are in all likelihood documents that are part of the record of the state court proceedings in this case, does not constitute good cause" and "the state court documents were accessible to Petitioner prior to bringing [the] habeas petition"). Petitioner has not identified any other attempt to obtain such materials since that time, and his FOIL requests do not appear to request any information that could be deemed "*Giglio* material." *See Cordero*, 2018 WL 3342573, at *4 (finding that petitioner had not shown good cause or a sufficient factor external to him where petitioner stated that he was waiting for records from the County Court, but "ha[d] not explained why, apart from the fact that he is *pro se* and unschooled in the law, he was unable to begin the process of obtaining the . . . records sooner"). Instead, Petitioner appears to ask the Court to "order the District Attorney to turn over the '*Giglio* material.'" (Stay Mot. 3.) However, "a habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Moreover, because Petitioner has failed to show good cause, the Court does not consider this request.

For these reasons, based on the facts of this case, Petitioner has not sufficiently shown that an external factor as opposed to his own actions have caused the failure to collect the evidence he still seeks, and for failure to exhaust his claims. *See Ramdeo*, 2006 WL 297462, at *5 (noting that under the external factor good cause standard, such good cause "must arise from an objective factor external to the petitioner which cannot fairly be attributed to him" (internal quotation marks and citations omitted)).

15

### III. Conclusion

For the foregoing reasons, the Court denies Petitioner's renewed motion to stay the petition. The Court grants Petitioner sixty (60) days from the date of this Memorandum and Order to amend his petition by removing the unexhausted claims, and to proceed on his exhausted claims. *Rhines*, 544 U.S. at 278 ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." (citation and internal quotation marks omitted)). If the Court does not receive an amended petition, it will presume that Petitioner prefers to have the Court proceed on his exhausted claims alone, rather than dismiss his entire petition. *See Young*, 2017 WL 480608, at *6 ("[T]he Court will presume, unless petitioner expressly indicates otherwise in his reply brief or other filing, that he would rather withdraw his unexhausted claim than face the dismissal of his entire petition.").

Dated: February 11, 2019
      Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge